IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| ELIZABETH P. TODD, | ) | Civ. No. 05-00081 ACK/KSC |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| R.L. BROWNLEE, ACTING | ) | |
| SECRETARY, UNITED STATES | ) | |
| ARMY; DOES 1-10, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND DENYING PLAINTIFF'S REQUEST TO POSTPONE THE RULING
ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

PROCEDURAL BACKGROUND

On February 3, 2005, Plaintiff Elizabeth P. Todd
("Plaintiff") filed a Complaint against R.L. Brownlee, the Acting
Secretary of the United States Army ("Defendant"), and Does 1-10,
alleging disability discrimination and retaliation under Section
501 et seq. of the Rehabilitation Act of 1973.  29 U.S.C. § 791
et seq. ("Complaint").

On April 4, 2005, Defendant filed an Answer to
Plaintiff's Complaint ("Answer").

On December 19, 2005, Defendant filed a Motion for
Summary Judgment ("Motion") and a Concise Statement in support of
the Motion ("Motion CSF").

On February 9, 2006, Plaintiff filed an Opposition to Defendant's Motion for Summary Judgment ("Opposition") and a Concise Statement of Facts in support of her Opposition ("Opposition CSF").

On February 15, 2006, Plaintiff filed a First Supplement to Memorandum in Opposition to Defendant's Motion for Summary Judgment ("Opposition Supplement"). Pursuant to Federal Rule of Civil Procedure 56(f), Plaintiff requested the Court postpone its ruling on the Motion until after Plaintiff's oral depositions of Defendant's managers originally scheduled for February 28, 2006. The depositions were ultimately postponed.

On February 17, 2006, Defendant filed a Reply to Plaintiff's Opposition to Defendant's Motion for Summary Judgment ("Defendant's Reply").

On February 22, 2006, Plaintiff filed a First Supplement to Plaintiff's Concise Statement of Facts in Opposition to Defendant's Concise Statement of Facts ("First Supplement to Opposition CSF"). This document provides signed copies of the declarations of Dailene Todd and Truman Todd that were originally submitted as attachments to Plaintiff's Opposition.

On March 2, 2006, Plaintiff filed a Second Supplement to Plaintiff's Concise Statement of Facts in Opposition to Defendant's Concise Statement of Facts ("Second Supplement to

2

Opposition CSF"). This Supplement contains a second declaration made by Plaintiff on February 28, 2006 ("Plaintiff's Feb. 28 Declaration").

On March 2, 2006, the Court held a hearing on Defendant's Motion for Summary Judgment.

## FACTUAL BACKGROUND[1]

Plaintiff Elizabeth Todd was born on April 29, 1978 with a medical condition, bilateral profound neurosensory hearing loss, that inhibits her hearing ability. Complaint ¶ 7. Her hearing loss is not complete, she was not raised in a deaf community, and she does not know sign language. Id. After years of auditory training and speech therapy, Plaintiff was hired by Defendant as a Child and Youth Program Assistant in the Fort Shafter Child Development Center on May 31, 2000. Motion CSF ¶ 1; Opposition CSF ¶ 1. Plaintiff was a flexible, on-call employee. Id. As a flexible, on-call employee, Plaintiff did not have regular room assignments or hours, and was assigned where needed. Motion CSF ¶ 2; Opposition CSF ¶ 2. She regularly worked in the room for infants/pre-toddlers. Motion CSF ¶ 3; Opposition CSF ¶ 3.

At the time Plaintiff was hired, Linda Puttler

---

[1] The facts as recited in this Order are for the purpose of disposing of this motion and are not to be construed as findings of fact that the parties may rely on in future proceedings in this case.

("Puttler") was the Director of the Center.   Complaint ¶ 19;
Answer ¶ 19.   On or about May 2002, Tiffany Miyashiro
("Miyashiro") began working at the Center.   Id.   Miyashiro
replaced Puttler as the Acting Director of the Center on or about
October 2002.   Id.   Training and Curriculum Specialist Jill
McCormack ("McCormack") was second in command at all relevant
times.   Id.

        Plaintiff was informed shortly after starting work that
she would be required to complete an entry and target level
training program and quarterly training requirements under the
Military Child Care Act.   Motion CSF ¶ 4; Opposition CSF ¶ 4.   On
at least four occasions throughout the course of her employment
Plaintiff was placed on a Performance Improvement Plan ("PIP")
for failing to meet her training goals.   Motion CSF ¶¶ 5, 6, 9;
Opposition CSF ¶¶ 5, 6, 9.   These plans were issued on November
28, 2000, July 3, 2001, December 28, 2001, and July 9, 2002.
Motion at 15; Motion CSF, Ex. 2 at 345-46, 348, 350.   Plaintiff
completed her foundation training and received a pay increase on
July 19, 2001.   Motion CSF ¶ 7, Opposition CSF ¶ 7.   On September
4, 2001, Plaintiff signed an Employee Statement of Understanding
acknowledging that she needed to be more flexible and to
recognize her position as a role model.   Motion CSF ¶ 8;
Opposition CSF ¶ 8.   On January 17, 2002, Plaintiff was promoted
and received a pay increase.   Motion CSF ¶ 10; Opposition CSF ¶

10.

At some point in 2001, Plaintiff's mother, Dailene Todd, spoke with the Center's Employee Relation Specialist Gloria Dong ("Dong").  Complaint ¶ 16; Answer ¶ 16.  Dong later met with Puttler to discuss how Puttler could assist Plaintiff with completing the training assignments.  Complaint ¶ 17; Answer ¶ 17. On September 25, 2002, Plaintiff and her mother met with an Equal Employment Opportunity Commission ("EEOC") Counselor Lillian Shibata ("Shibata").  Complaint ¶ 23; Answer ¶ 23. Plaintiff alleges she filed an informal EEOC complaint at this time.  Opposition CSF ¶ 23 (citing Declarations of Elizabeth and Dailene Todd).  Shibata informed Miyashiro before the October 7, 2002 meeting that Plaintiff had contacted the EEOC.  Motion CSF, Ex. 1 (Testimony of Miyashiro) 110:14-111:2.  Plaintiff and her mother met with Miyashiro, Shibata, and McCormack on October 7, 2002.  A fifth PIP was issued at this time because Plaintiff was not in compliance with her training requirements.  Motion CSF ¶ 20; Opposition CSF ¶ 20.

Defendant proposed Plaintiff's termination on or about January 15, 2003.  Motion CSF ¶ 24; Opposition CSF ¶ 24. Plaintiff was notified of her termination on or about January 30, 2003 by mail.  Motion CSF ¶ 25; Opposition CSF ¶ 25.  Defendant officially terminated Plaintiff as of February 12, 2002.  Motion CSF ¶ 27; Opposition CSF ¶ 27 (Plaintiff disputes the term

"terminated," stating instead that she was "separated from
flexible appointment" and that the action was "without prejudice"
allowing her to be "hired by another NAFI activity)(quoting
Motion CSF, Ex. 2 at 121).  Plaintiff filed a formal EEOC
Complaint on or about April 24, 2003.  Opposition CSF, Ex. C at
3; Answer at 5.

    In the ten months prior to her termination, Plaintiff
worked the following number of hours: April 2002 - 15; May 2002 -
4.5; June 2002 - 9; July 2002 - 0; August 2002 - 9; September
2002 - 0; October 2002 - 32; November 2002 - 21; December 2002 -
38.2; January 2003 - 17.  Motion at 3, 4; Opposition to Motion
CSF, Plaintiff Declaration; Defendant's Reply at 8, 9.

## **STANDARD**

    The purpose of summary judgment is to identify and
dispose of factually unsupported claims and defenses.  <u>See</u>
<u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).  Summary
judgment is therefore appropriate when the "pleadings,
depositions, answers to interrogatories, and admissions on file,
together with the affidavits, if any, show that there is no
genuine issue of material fact and that the moving party is
entitled to judgment as a matter of law."[2]  Fed. R. Civ. P.

---

[2] Affidavits made on personal knowledge and setting forth
facts as would be admissible at trial are evidence that a court
may consider when determining whether a material issue of fact
exists.  Fed. R. Civ. P. 56(e).  Legal memoranda and oral
argument are not evidence and do not create issues of fact.  <u>See</u>

56(c).

"A fact is 'material' when, under the governing
substantive law, it could affect the outcome of the case.  A
genuine issue of material fact arises if 'the evidence is such
that a reasonable jury could return a verdict for the nonmoving
party.'"[3] <u>Thrifty Oil Co. v. Bank of Am. Nat'l Trust & Sav.
Ass'n</u>, 310 F.3d 1188, 1194 (9th Cir. 2002)(quoting <u>Union Sch.
Dist. v. Smith</u>, 15 F.3d 1519, 1523 (9th Cir. 1994))(internal
citations omitted).  Conversely, where the evidence "could not
lead a rational trier of fact to find for the nonmoving party,
there is no 'genuine issue for trial.'" <u>Matsushita Elec. Indus.
Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986)(quoting <u>First
Nat'l Bank v. Cities Serv. Co.</u>, 391 U.S. 253, 289 (1968)).

The moving party has the burden of persuading the court
as to the absence of a genuine issue of material fact.  <u>Celotex</u>,
477 U.S. at 323.  The moving party may do so with affirmative
evidence or by "'showing'- that is pointing out to the district
court – that there is an absence of evidence to support the
nonmoving party's case." <u>Id</u>. at 325.  All evidence and
reasonable inferences drawn therefrom are considered in the light

---

<u>British Airways Bd. v. Boeing Co.</u>, 585 F.2d 946, 952 (9th Cir.
1978).

[3] Disputes as to immaterial issues of fact do "not preclude
summary judgment." <u>Lynn v. Sheet Metal Workers' Int'l Ass'n</u>, 804
F.2d 1472, 1478 (9th Cir. 1986).

7

most favorable to the nonmoving party.  <u>See, e.g.</u>, <u>T.W. Elec.
Serv. v. Pac. Elec. Contractors Ass'n</u>, 809 F.2d 626, 630-31 (9th
Cir. 1987).  So, too, the court's role is not to make credibility
assessments.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249
(1986).  Accordingly, if "reasonable minds could differ as to the
import of the evidence," summary judgment will be denied.  <u>Id</u>. at
250-51.

    Once the moving party satisfies its burden, however,
the nonmoving party cannot simply rest on the pleadings or argue
that any disagreement or "metaphysical doubt" about a material
issue of fact precludes summary judgment.  <u>See</u> <u>Celotex</u>, 477 U.S.
322-23; <u>Matsushita Elec.</u>, 475 U.S. at 586; <u>Cal. Arch. Bldg.
Prods., Inc. v. Franciscan Ceramics, Inc.</u>, 818 F.2d 1466, 1468
(9th Cir. 1987).  Nor will uncorroborated allegations and "self-
serving testimony" create a genuine issue of material fact.
<u>Villiarimo v. Aloha Island Air, Inc.</u>, 281 F.3d 1054, 1061 (9th
Cir. 2002); <u>see</u> <u>also</u> <u>T.W. Elec. Serv.</u>, 809 F.2d at 630.  The
nonmoving party must instead set forth "significant probative
evidence" in support.  <u>T.W. Elec. Serv.</u>, 809 F.2d at 630.
Summary judgment will thus be granted against a party who fails
to demonstrate facts sufficient to establish an element essential
to his case when that party will ultimately bear the burden of

proof at trial.[4]   See Celotex, 477 U.S. at 322.

## DISCUSSION

Plaintiff claims she was subjected to unlawful employment disability discrimination in violation of Section 501 et seq. of the Rehabilitation Act of 1973, 29 U.S.C. § 791 et seq.. Section 504 of the Rehabilitation Act provides:

> No otherwise qualified individual with a disability in the United States [defined elsewhere] shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance....

29 U.S.C. § 794(a).  To properly allege a prima facie case under the Rehabilitation Act a plaintiff must show that she is "(1) an individual with a disability, (2) otherwise qualified and (3) subjected to discrimination solely by reason of [her] disability." Mustafa v. Clark County School District, 157 F.3d 1169, 1174 (9th Cir. 1998).  If the plaintiff successfully makes

---

[4] When the moving party also has the burden of proof in an element of a claim, it has the "burden of establishing a prima facie case on the motion for summary judgment." UA Local 343 of the United Ass'n of Journeymen v. Nor-Cal Plumbing, Inc., 48 F.3d 1465, 1471 (9th Cir. 1995).  Upon showing a prima facie case, the burden of production shifts and it becomes "incumbent on [the nonmoving party] to 'set forth specific facts showing that there is a genuine issue for trial,' by evidence cognizable under that rule." Id. (quoting Fed. R. Civ. P. 56(e)); Charles Alan Wright et al., Federal Practice & Procedure § 2727 (3d ed. 1998).  The ultimate burden of persuasion as to the non-existence of any genuine issues of material fact remains on the moving party. Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000); accord Dye v. United States, 121 F.3d 1399, 1409 (10th Cir. 1997).

a prima facie case under the Act, then the burden shifts to the defendant to articulate a legitimate nondiscriminatory reason for its employment actions.  Lucero v. Hart, 915 F.2d 1367, 1371 (9th Cir. 1990)(citing Reynolds v. Brock, 815 F.2d 571, 574 (9th Cir. 1987)); McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).  If the employer demonstrates a non-discriminatory reason for its actions then the plaintiff is given the opportunity to show that the employer's justification is pretextual.  See Mustafa, 157 F.3d at 1175 (adopting the Title VII analysis from McDonnell Douglas).

### A.   Individual with a Disability

An individual with a disability is defined as "any person who (i) has a physical or mental impairment which substantially limits one or more of such person's major life activities; (ii) has a record of such impairment; or (iii) is regarded as having such impairment.  29 U.S.C. 705(20)(B).  Plaintiff was born with a medical condition called bilateral profound neurosensory hearing loss.  Opposition at 2.  There is no doubt that Plaintiff's permanent hearing loss is a physical impairment that substantially limits her major life activities.  Defendant does not dispute that Plaintiff is an individual with a disability.  Defendant's Reply at 2.

10

B.   **Qualified Individual**

"Under the Rehabilitation Act, a qualified individual is an individual with a disability who with or without reasonable accommodation, can perform the essential functions of the position." Mustafa, 157 F.3d at 1175 (internal citations omitted)(citing 29 C.F.R. § 1630.2(m)).   "Essential functions are the fundamental duties of the relevant position." Mustafa, 157 F.3d at 1175 (citing 29 C.F.R. § 1630.2(n)(1)).   The parties do not dispute that Plaintiff is a qualified individual as defined by the Act for the position of Child and Youth Program Assistant ("care-giver").

C.   **Disability Discrimination**

Under the Rehabilitation Act, Plaintiff must show that she was discriminated against solely on the basis of her disability.   Mustafa, 157 F.3d at 1175.   Plaintiff alleges that she was discriminated against in the following three distinct discriminatory ways: (1) Defendant failed to reasonably accommodate Plaintiff's disability; (2) Defendant subjected Plaintiff to disparate treatment based on her disability; and (3) Defendant retaliated against her when she filed an EEOC complaint.   Complaint ¶¶ 12, 13, 26, and 27.

1.   Reasonable Accommodation

Plaintiff contends that she was denied reasonable accommodations necessary for her to perform the essential

11

functions of the job.[5]  Opposition at 21.  Under the Americans

with Disabilities Act, the term "reasonable accommodation" is

defined as:

> (A) making existing facilities used by employees
> readily accessible to and usable by individuals with
> disabilities; and
>
> (B) job restructuring, part-time or modified work
> schedule, reassignment to a vacant position,
> acquisition or modification of equipment or devices,
> appropriate adjustment or modifications of
> examinations, training materials or policies, the
> provision of qualified readers or interpreters, and
> other similar accommodations for individuals with
> disabilities.

42 U.S.C. § 12111(9).

Plaintiff alleges that she requested and was denied the

following reasonable accommodations:[6]

---

[5] Plaintiff also notes a court may conclude that a party was
denied reasonable accommodations even if the employee could
perform the essential functions of the job without reasonable
accommodations.  These accommodations should be provided so that
the disabled employee may "(a) enjoy the privileges and benefits
of employment equal to those enjoyed by non-handicapped employees
or (b) pursue therapy or treatment for their handicaps."
Buckingham v. United States, 998 F.2d 735, 740 (9th Cir.
1993)(superseded by statute on other grounds).  Plaintiff's
counsel explained at the March 2, 2006 hearing that Plaintiff was
not relying on this theory for relief, but simply illustrating
the breadth of successful reasonable accommodation claims.

[6] Plaintiff contends that she only needs to show that
reasonable accommodations would, more probably than not, have
allowed her to perform the essential functions of the job.
Opposition at 21 (citing Buckingham, 998 F.2d at 742)(where the
defendant refused to transfer a disabled employee arguing that it
was not obligated to do so).  However, as Plaintiff acknowledges,
the Ninth Circuit applied this standard in Buckingham after
concluding that the defendant had refused to provide reasonable
accommodations.  In the present case, the dispute is not over

12

a. a note taker for classes, training, lectures, television films, videotapes, etc.;

b. close captioning for training films, television, videotapes, etc.;

c. written communications instead of audible classroom intercom system which she could not hear;

d. written communications regarding training courses and the dates and times that were scheduled;

e. written communications regarding deadlines, assignments, modulars, etc. that she was required to complete;

f. written communications regarding changes to her work schedule; and

g. others.

Complaint ¶ 12.

Defendant denies these allegations and contends that it did accommodate Plaintiff's disability.  Answer at 3; Motion at 14.  Defendant specifically claims it provided co-workers as note takers for training sessions; allowed Plaintiff to bring her own note taker to training sessions; allowed Plaintiff to watch training videos at home; never made announcements pertinent to Plaintiff over the intercom system; posted training schedules in a schedule book, on bulletin boards, and on Plaintiff's personal schedule; and informed Plaintiff of training requirements through

---

whether Defendant must provide reasonable accommodations, but whether it did or not.  Defendant contends that it provided reasonable accommodations for Plaintiff's hearing disability. Motion at 14.  Therefore, the probability standard used in Buckingham does not apply to the dispute in this case.

her Individual Development Plan, Annual Training Plan, and checklists.   Motion CSF ¶¶ 28-31, 34.   Plaintiff denies that these accommodations were provided or that the Defendant's actions were adequate.   Opposition to Motion ¶¶ 28-31, 34; Motion CSF, Ex. 1 (Transcript of Fact Finding Conference) 149:21-154:8.

At the summary judgment stage of the proceedings, the burden is on the movant to show there is no genuine issue of material fact and all inferences drawn from evidence are considered in a light most favorable to the non-movant. Defendant has not met its burden regarding the issue of whether it provided reasonable accommodations to Plaintiff.   Plaintiff has alleged sufficient examples of a failure to provide reasonable accommodations necessary to perform the essential functions of her job under 42 U.S.C. § 12111(9)(B).   Plaintiff's allegations are presented in her complaint, reaffirmed in two sworn declarations, and stated during sworn testimony in an administrative Fact Finding Conference for the Department of Defense.   The Court concludes that there are genuine issues of material fact as to whether Defendant adequately provided reasonable accommodations to Plaintiff.   Therefore, the Court denies Defendant's Motion regarding Plaintiff's reasonable accommodation claim.

2.  <u>Disparate Treatment</u>

        To prevail in a disparate treatment claim, a plaintiff
must "prove that the employer acted with conscious intent to
discriminate." <u>Costa v. Desert Palace, Inc.</u>, 299 F.3d 838, 854
(9th Cir. 2002)(<u>citing</u> <u>McDonnel Douglas</u>, 411 U.S. at 805-06).
When a defendant moves for summary judgment, the plaintiff
alleging disparate treatment may meet her Fed. R. Civ. P. 56
burden in two ways.  <u>Cornwell v. Electra Central Credit Union</u>,
2006 WL 473845 at *7 (9th Cir. 2006); <u>McGinest v. GTE Service</u>
<u>Corp.</u>, 360 F.3d 1103, 1122 (9th Cir. 2004).  On one hand, a
plaintiff may provide direct or circumstantial evidence "that a
discriminatory reason more likely motivated the employer" to
engage in disparate treatment.  <u>Cornwell</u>, 2006 WL 473845 at *7
(<u>citing</u> <u>Texas Dep't of Cmty. Affairs v. Burdine</u>, 450 U.S. 248,
256 (1981)).  If the plaintiff successfully presents such
evidence, or genuine issues of material fact exist regarding the
evidence, then the defendant's motion for summary judgment is
denied.

        In the alternative, the plaintiff may survive summary
judgement by engaging in the <u>McDonnell Douglas</u> burden shifting
analysis.  <u>Cornwell</u>, 2006 WL 473845 at *7; <u>McGinest</u>, 360 F.3d at
1122.  Implementing the latter approach first requires the
plaintiff to establish a prima facie case of discrimination.
<u>McGinest</u>, 360 F.3d at 1122; <u>Burdine</u>, 450 U.S. at 254.  The four

15

required elements of a successful disparate treatment claim are
(1) plaintiff belongs to a protected class; (2) plaintiff was
qualified for the position; (3) plaintiff was subject to an
adverse employment action; and (4) similarly situated individuals
outside her protected class were treated more favorably. <u>Chuang
v. University of California Davis, Bd. of Trustees</u>, 225 F.3d
1115, 1123 (9th Cir. 2000); <u>Burdine</u>, 450 U.S. at 254 n. 6. "The
burden of establishing a prima facie case of disparate treatment
is not onerous." <u>Id</u>. at 253. By establishing the prima facie
case, the plaintiff creates a presumption of discrimination.
Then, the burden of production shifts to the defendant to rebut
the claim by articulating a legitimate, nondiscriminatory reason
for its conduct. <u>Cornwell</u>, 2006 WL 473845 at *7; <u>Raytheon Co. v.
Hernandez</u>, 540 U.S. 44, 50 n. 3 (2003). If the defendant
produces a non-discriminatory explanation, then the presumption
of discrimination is dropped and the plaintiff must satisfy the
original burden of persuasion. <u>Costa</u>, 299 F.3d at 855; <u>Burdine</u>,
450 U.S. at 255.

        The plaintiff can then satisfy the burden of persuasion
in two ways. <u>Cornwell</u>, 2006 WL 473845 at *7; <u>Burdine</u>, 450 U.S.
at 265. The plaintiff may make the same showing that she could
have made originally, in the absence of the <u>McDonnel Douglas</u>
burden shifting, by offering direct or circumstantial evidence
"that a discriminatory reason more likely motivated the employer"

to engage in disparate treatment.  Cornwell, 2006 WL 473845, *7
(citing Burdine, 450 U.S. at 256).  Or, the plaintiff can offer
evidence that the "employer's proffered explanation is unworthy
of credence."  Burdine, 450 U.S. at 256 (citing McDonnel Douglas,
411 U.S. at 804-05).  If the plaintiff is successful in either
case, or genuine issues of material fact remain, then the
defendant's motion for summary judgment is denied.

    As discussed above, no party disputes that Plaintiff
belongs to a protected class of disabled individuals and she was
qualified for the position of care-giver.  Defendant has moved
for summary judgment on the grounds that plaintiff was not
subject to adverse employment actions and she was not treated
differently than other similarly situated employees.  Plaintiff
alleges that she was subjected to the following examples of
disparate treatment:

> a.  Being yelled at and humiliated in view and hearing
> of co-workers and parents, who later approached the
> Plaintiff expressing concerns about the treatment.
>
> b.  Not viewing the training films/videos when
> scheduled as the non-hearing employees did.
>
> c.  Not being given information about assignments and
> modulars due dates.
>
> d.  Not being given the full benefit of training
> courses and lectures which she could not hear.
>
> e.  Not being notified about changes to her work
> schedule and marked down AWOL.
>
> f.  Being falsely accused of not repairing her hearing
> aid.

g.  Not being notified about job openings.

h.  Not being hired for regular part-time, or regular full-time positions she applied for.

i.  Misplacing her completed assignments, making her re-do them, then later "finding" the original turned in assignments.

j.  Not being informed of the classroom intercom notices which she could not hear.

k.  Writing down that she called in "sick" when she was calling to find out what her work schedule was.

l.  Having her work and whereabouts questioned and excessively scrutinized.

m.  Refusing to make adjustments to Plaintiff's work schedule, while scheduling non-hearing impaired employees around their other job schedules.

n.  Threatening Plaintiff with termination of employment for asking about available work hours.

o.  Being told, "I don't have time to worry about your needs!  Go do it on your own!" when Plaintiff asked for reasonable accommodation.

p.  Being told to get her own note taker.

q.  Harassing Plaintiff by pulling her out of the classroom to question her about insignificant matters, disrupting the classroom and leaving it short-handed.

r.  Failing to inform her about training courses she was to attend until after they were held.

s.  Others.

Complaint ¶ 13.  See Second Supplement to Opposition CSF

(Plaintiff's Feb. 28 Declaration (identifying specific dates and

facts in support of these allegations)).

Defendant generally denies that it subjected Plaintiff

to disparate treatment and offers supporting testimony from
supervisors McCormack and Miyashiro and Employer Relation
Specialist Dong to that effect.  Defendant's Reply ¶ 7 (<u>citing</u>
Motion CSF, Ex. 1 at 100, 233-34, 269-74).  Furthermore,
Defendant contends that Plaintiff's claims of disparate treatment
can not establish a genuine issue of material fact because they
are set forth in a self-serving affidavit.  Defendant's Reply at
4-5.  However, Defendant concedes that "self-serving affidavits
are cognizable to establish a genuine issue of material fact so
long as they state facts based on personal knowledge and are not
too conclusory."  <u>Rodriquez v. Airborne Express</u>, 265 F.3d 890,
902 (9th Cir. 2001).  Defendant then cites <u>Federal Trade</u>
<u>Commission v. Publishing Clearing House, Inc.</u> to rebut the
<u>Rodriquez</u> rule, but his reliance on <u>FTC</u> is misplaced.  104 F.3d
1168, 1171 (9th Cir. 1997).  In <u>FTC</u>, the court found that an
appellant's conclusory, self-serving affidavit that lacked any
detailed facts or supporting evidence failed to establish a
genuine issue of material fact.  <u>Id</u>.

      Here, Plaintiff has alleged many specific instances of
disparate treatment in her affidavits.  <u>See</u> Opposition CSF,
Plaintiff Declaration ¶¶ 9, 25, 26; Second Supplement to
Opposition CSF (Plaintiff's Feb. 28 Declaration at IIa-IIr).
Accordingly, the Court considers whether Plaintiff has set forth
sufficient allegations and accompanying detailed facts in her

19

affidavits that a discriminatory reason motivated the employer to engage in disparate treatment.

Plaintiff alleges that she was treated differently than other employees, but she has not specifically alleged that she was treated differently than other similarly situated employees. "[I]ndividuals are similarly situated when they have similar jobs and display similar conduct." Josephs v. Pacific Bell, 432 F.3d 1006, 1017 (9th Cir. 2005)(quoting Vasquez v. County of Los Angeles, 349 F.3d 634, 641 (9th Cir. 2003)(holding that a supervisor and non-supervisor were not similarly situated)). Plaintiff had an atypical employment arrangement as a long-term flexible, on-call employee.  Neither party has offered evidence that there were other long-term flexible, on-call employees.  Ann Vilamu and Natalie Higa, the only other care-givers who testified at the administrative Fact Finding Conference, both appear to be full-time employees that worked at the Center for approximately eighteen years.  Motion CSF, Ex. 1 at 113, 179.

In the absence of evidence of other flexible, on-call employees, the Court concludes that only allegations of conduct that could apply to all care-givers may be considered in support of the disparate treatment claim.  Thus, allegations of disparate treatment regarding interpersonal conduct and training requirements may be considered.  Regarding allegations related to scheduling, attendance, or hiring, Plaintiff's unique position

precludes her from comparing herself to employees that were not flexible or on-call.  In the absence of evidence of similarly situated employees, the Court concludes Plaintiff's specific allegations (e), (h), (k), and (m) can not be considered to sustain her disparate treatment claim.[7]  The Court also disregards allegation (s) in the absence of any specific supporting facts or evidence.

In addition to its general denial of all disparate treatment allegations, Defendant has responded individually to many of the allegations.

### Allegation (a)

Defendant admits that Miyashiro raised her voice at Plaintiff one time over the phone.  Motion at 18.  Plaintiff's claim actually stems from an alleged January 3, 2003 incident where Miyashiro yelled at her in front of parents and co-workers.  Second Supplement to Opposition CSF (Plaintiff's Feb. 28 Declaration at IIa).  Defendant denies that Plaintiff was yelled at in view of parents and co-workers, and  emphasizes Plaintiff has not provided a witness to corroborate this claim.  Defendant

---

[7]  The specific allegations are: (e) Not being notified about changes to her work schedule and marked down AWOL; (h) Not being hired for regular part-time, or regular full-time positions she applied for; (k) Writing down that she called in "sick" when she was calling to find out what her work schedule was; and (m) Refusing to make adjustments to Plaintiff's work schedule, while scheduling non-hearing impaired employees around their other job schedules.

also offers testimony from co-workers Debbie Higa and Ann Vilamu

stating that they never observed a supervisor yelling at

Plaintiff.  Motion at 18 (<u>citing</u> Motion CSF, Ex. 1 at 129, 190).

In the alternative, Defendant argues that simple

teasing, offhand comments, and isolated incidents (unless

extremely serious) do not constitute actionable discrimination.

Motion at 17 (<u>citing</u> <u>Hardage v. CBS Broadcasting Inc.</u>, 427 F.3d

1177, 1189 (9th Cir. 2005).  However, in <u>Hardage</u>, the court's

conclusion applied to a retaliation claim, not disparate

treatment.  <u>Id</u>.  Therefore, this incident may not suffice on its

own to sustain Plaintiff's retaliation claim, but the incident

may be considered as evidence supporting her disparate treatment

claim since there were other incidences of disparate treatment.

### Allegation (b)

Defendant admits that Plaintiff watched certain

training videos on her own.  Defendant asserts that individual

training sessions were occasionally established as a reasonable

accommodation.  Plaintiff alleges that she watched videos on her

own on at least eight occasions from December 2000 through April

2002.  Second Supplement to Opposition CSF (Plaintiff's Feb. 28

Declaration at IIb).  Plaintiff offers no additional evidence

that Defendant's explanation is pretext for discrimination.

### Allegation (c)

Defendant denies that Plaintiff was denied information

22

about training requirements.   Defendant offers the testimony of
co-worker Ann Vilamu stating that each employee had an individual
training folder with information about required training.   Motion
CSF, Ex. 1 at 190.   Vilamu also stated that training schedules
were centrally located in a schedule book kept in the main
office.   Id. at 191-92.   Plaintiff alleges that she was denied
information regarding due dates and assignments for twenty-nine
training requirements.   Second Supplement to Opposition CSF
(Plaintiff's Feb. 28 Declaration at IIc).

Allegation (d)

Defendant admits that Plaintiff could not hear the
training sessions perfectly and did not receive the full benefit
of training.   However, Defendant alleges that it provided
independent training sessions to address this concern allowing
Plaintiff to complete the training to a satisfactory level so no
disparate treatment occurred.   Plaintiff alleges that she did not
receive the full benefit of the training sessions on at least
twelve occasions from July 2001 through November 2002.   Second
Supplement to Opposition CSF (Plaintiff's Feb. 28 Declaration at
IId).

Allegation (e)

The Court concludes that Plaintiff has failed to
provide evidence that a similarly situated employee was treated
more favorably than her.

23

Allegation (f)

Defendant offers no specific rebuttal, explanation, or denial.  Plaintiff alleges Miyashiro accused her of neglecting to repair her hearing aid on December 2, 2002.

Allegation (g)

Defendant admits that Plaintiff was not individually informed of job openings.  Defendant contends that no individual employee was informed of job vacancies.  Defendant alleges that all job vacancies were posted on two bulletin boards and in the staff room.  Motion CSF, Ex. 1 (Testimony of McCormack, Higa, and Miyashiro) 97-98; 138-39; 231-32.  Defendant also alleges that Plaintiff was informed of the location of these postings during her initial orientation.  Motion at 8.

Plaintiff alleges that she was not informed as to the location of the job postings until January 2002, approximately nineteen months after she began her job.  Second Supplement to Opposition CSF (Plaintiff's Feb. 28 Declaration at IIg).

Allegation (h)

The Court concludes that Plaintiff has failed to provide evidence that a similarly situated employee was treated more favorably than her.

Allegation (i)

Defendant admits that some of Plaintiff's training assignments may have been lost.  However, Defendant offers

24

testimony of a non-hearing disabled co-worker that also complained about lost assignments.  Motion at 20 (<u>citing</u> Motion CSF, Ex. 1 (Testimony of Debbie Higa) 119:3-4).  Plaintiff alleges that her assignment for module 10 was lost and she was required to redo the assignment.  Second Supplement to Opposition CSF (Plaintiff's Feb. 28 Declaration at IIi).

### Allegation (j)

Defendant admits that it did not inform Plaintiff about the content of the classroom intercom notices.  Defendant alleges that it did not make announcements over the intercom that applied to Plaintiff and had no reason to inform her about the messages.  Plaintiff offers no evidence that Defendant's explanation is pretext for discrimination.

### Allegation (k)

The Court concludes that Plaintiff has failed to provide evidence that a similarly situated employee was treated more favorably than her.

### Allegation (l)

Defendant offers no specific rebuttal, explanation, or denial.  Plaintiff alleges that this treatment occurred on November 12, 2002 as she attempted to take a break.

### Allegation (m)

The Court concludes that Plaintiff has failed to provide evidence that a similarly situated employee was treated

more favorably than her.

### Allegation (n)

Defendant offers no specific rebuttal, explanation, or denial.  Plaintiff alleges that Miyashiro threatened to terminate her some time in November 2002.  Second Supplement to Opposition CSF (Plaintiff's Feb. 28 Declaration at IIn).

### Allegation (o)

Defendant offers no specific rebuttal, explanation, or denial.  Plaintiff alleges that Miyashiro ignored her requests for reasonable accommodations in December 2002.  Second Supplement to Opposition CSF (Plaintiff's Feb. 28 Declaration at IIo).

### Allegation (p)

Defendant admits that it told Plaintiff she could provide her own note taker to assist with the training sessions. Defendant contends that this was a reasonable accommodation. Plaintiff alleges that she was told to get her own note taker on January 8, 2003.  Second Supplement to Opposition CSF (Plaintiff's Feb. 28 Declaration at IIp).  Plaintiff offers no additional evidence that Defendant's explanation is pretext for discrimination.

### Allegation (q)

Defendant admits that Plaintiff was removed from the classroom to discuss work-related matters about ten times in the

two and a half year period of employment.  Defendant offers testimony that a non-hearing impaired co-worker was interrupted in the classroom as well.  Motion at 20 (<u>citing</u> Motion CSF, Ex. 1 (Testimony of Debbie Higa) 119:25-120:7).  In addition, Defendant alleges that it is within the normal course of business that a supervisor would interrupt an employee to have work-related conversations.

Plaintiff alleges she was frequently removed from the classroom for questioning regarding insignificant matters from January 2002 through January 2003.  Second Supplement to Opposition CSF (Plaintiff's Feb. 28 Declaration at IIq).  Plaintiff offers no additional evidence that Defendant's explanation is pretext for discrimination.

Allegation (r)

Defendant denies that Plaintiff was denied information about training schedules.  Defendant offers the testimony of co-worker Ann Vilamu stating that each employee had an individual training folder with information about required training.  Motion CSF, Ex. 1 at 190.  Vilamu also stated that training schedules were centrally located in a schedule book kept in the main office.  <u>Id</u>. at 191-92.  Plaintiff alleges that Defendant failed to inform her of five different training courses that took place on eleven occasions.  Second Supplement to Opposition CSF (Plaintiff's Feb. 28 Declaration at IIr).

27

Allegation (s)

The Court concludes that Plaintiff has failed to provide any specific facts or evidence ro support this allegation.

Based on the foregoing, the Court concludes Plaintiff has provided circumstantial evidence that a discriminatory reason motivated Defendant to engage in disparate treatment. Plaintiff alleges numerous instances of suffering negative treatment that her similarly situated co-workers were not subjected to. She provides specific facts in her declarations that are substantial and more than conclusory, self-serving affidavits. While some of Plaintiff's allegations are insufficient to constitute disparate treatment and Plaintiff has chosen not to argue Defendant's explanations are pretextual, the Court concludes numerous genuine issues of material fact remain to be considered by the trier of fact. Therefore, the Court denies Defendant's Motion regarding Plaintiff's disparate treatment claim.[8]

---

[8] Plaintiff asks the Court to postpone its ruling on the Motion for Summary Judgment regarding her disparate treatment claim pursuant to Fed. R. Civ. P. 56(f). The Court's denial of the Motion appears to render Plaintiff's request unnecessary. In the event that Plaintiff's request for a postponement remains in tact, the Court denies her request. In order to succeed on a 56(f) motion, the party seeking discovery must demonstrate "why discovery is warranted" and "bears the burden of showing what specific facts it hopes to discover that will raise an issue of material fact." See Jarrow Formulas, Inc. v. Nutrition Now, Inc., 304 F.3d 829, 842 (9th Cir. 2002); Harris v. Duty Free Shoppers Ltd. Partnership, 940 F.2d 1272, 1276 (9th Cir. 1991). Plaintiff fails to offer any explanation as to why she did not

3.   Retaliation

a.   Prima Facie Case

       "A *prima facie* case of retaliation requires plaintiff to show: '(1) involvement in a protected activity, (2) an adverse employment action and (3) a causal link between the two.'" Coons v. Secretary of the United States Department of the Treasury, 383 F.3d 879, 887 (9th Cir. 2004)(quoting Brown v. City of Tucson, 336 F.3d 1181, 1187 (9th Cir. 2003)).   The plaintiff must provide evidence that she suffered an adverse employment action based on a discriminatory rationale after she undertook a protected activity.   Coons, 383 F.3d at 887.   Therefore, Plaintiff must establish a link between her meeting with EEOC Counselor Lillian Shibata and the subsequent assessment of a Performance Improvement Plan ("PIP") or her eventual termination.

       Plaintiff alleges that she met with EEOC Counselor Shibata to file a disability discrimination complaint on September 25, 2002 as a result of Defendant's failure to provide reasonable accommodations and the disparate treatment she suffered.   It is clear that meeting with the EEOC and filing an informal complaint are protected employment actions.

       On October 7, 2002, Shibata, Plaintiff, Dailene Todd, Miyashiro, and McCormack met.   At this meeting, Miyashiro issued a PIP to Plaintiff.   Plaintiff alleges that this PIP was issued

seek to depose the three specific witnesses at an earlier time.

in retaliation for filing a complaint with the EEOC two weeks
earlier.  Plaintiff further alleges that she was officially
terminated four months later, on February 12, 2003, also in
retaliation for filing the original EEOC complaint.  The Court
will address separately the three stages of the McDonnell Douglas
burden shifting inquiry for each of the alleged adverse
employment actions.

i.   October 7, 2002 PIP

          The Ninth Circuit broadly defines the boundaries of
what constitutes an adverse employment action.  Ray v. Henderson,
217 F.3d 1234, 1240 (9th Cir. 2000).  Suspension, demotion,
transfer, and issuance of undeserved performance ratings are just
a few of the activities that may constitute an adverse employment
action.  Id. at 1241, 1242.  Ultimately, the "action is
cognizable as an adverse employment action if it is reasonably
likely to deter employees from engaging in protected activity."
Id. at 1243.  Performance Improvement Plans relate a negative
performance assessment and inform the recipient that a failure to
comply with the PIP could result in additional consequences, such
as suspension or termination.  Motion CSF at 346 (July 3, 2001
PIP).  Under the Ninth Circuit's broad definition of an adverse
employment action, the Court concludes that the implementation of
a Performance Improvement Plan constitutes an adverse employment
action.

The Court also concludes that Plaintiff has alleged a sufficient link between her EEOC complaint and the PIP to establish a prima facie case.  After Plaintiff's meeting with Shibata, Shibata discussed the complaint with Miyashiro.  Motion CSF, Ex. 1 (Testimony of Miyashiro) 110:14-111:2; Opposition to Motion ¶ 18 (Declaration of Dailene Todd).  Defendant disputes that Shibata actually told Miyashiro about the informal complaint, but it is clear that Miyashiro knew Plaintiff had at least approached the EEOC.  Defendant's Reply ¶ 18.  In addition, for the purpose of Defendant's summary judgment motion, the evidence and reasonable inferences drawn therefrom are considered in the light most favorable to Plaintiff.  Therefore, the Court finds that Plaintiff has established a causal link between her complaint and the issuance of the PIP to the extent necessary in making a prima facie case of retaliation.

ii.  <u>Termination</u>

It is clear that termination is an adverse employment action and that Defendant knew of the informal EEOC complaint when it chose to terminate Plaintiff.  Plaintiff was employed as a flexible, on-call caregiver at Fort Shafter Child Development Center since May 31, 2000.  Plaintiff filed her informal EEOC complaint on September 25, 2002 and Plaintiff met with her supervisors on October 7, 2002.  Plaintiff alleges that Defendant threatened to terminate her some time in November 2002.  Second

31

Supplement to Opposition CSF (Plaintiff's Feb. 28 Declaration at IIn).  Defendant proposed Plaintiff's termination on January 15, 2003 and notified her of the termination on January 30, 2003. Motion CSF ¶¶ 24, 25.  Defendant officially terminated Plaintiff from her position on February 12, 2002.  Plaintiff alleges that her termination was close enough in time to the filing of the complaint that the Court should infer that her termination was retaliatory.

The Ninth Circuit has stated that "causation can be inferred from timing alone where an adverse employment action follows on the heels of protected activity." <u>Villiarimo</u>, 281 F.3d at 1065.  Citing cases from the Ninth Circuit and beyond, the court declined to draw a bright line rule limiting the amount of time that may pass when causation can still be inferred from timing alone.  <u>Id</u>.  The line appears to fall around a three to four month span.  <u>Id</u>. (<u>citing</u> <u>Filipovic v. K & R Express Sys., Inc.</u>, 176 F.3d 390, 398-99 (7th Cir. 1999)(four months too long); <u>Davidson v. Midelfort Clinic, Ltd.</u>, 133 F.3d 499, 511 (7th Cir. 1998)(five months too long); <u>Conner v. Schnuck Markets, Inc.</u>, 121 F.3d 1390, 1395 (10th Cir. 1997)(four months too long)). Ironically, approximately three and one half months passed between the time when Defendant knew about the EEOC contact, and when termination was first proposed on January 15, 2003. Moreover, in addition to the facts of this case fitting within

the rough time frame approved by other courts, the Court looks to other evidence of retaliation that supports the prima facie case.

First, Plaintiff alleges that Defendant threatened to fire her at some point in November 2002 for asking about available work hours.  A singular threat may not be enough to constitute an adverse employment action under the Ninth Circuit's expansive definition of an adverse employment action.  However, the Court finds the threat is additional evidence in support of Plaintiff's prima facie case of retaliatory termination.

Next, Plaintiff alleges that Defendant issued a PIP on October 7, 2002, only two weeks after she made contact with the EEOC.  Ultimately, it may be determined that the issuance of the PIP was not retaliatory, but at the prima facie stage of the inquiry the act provides some support to Plaintiff's claims of retaliatory activity.

Finally, Plaintiff alleges that many of her disparate treatment claims occurred from November 2002 through January 2003.  Opposition CSF, Ex. C (EEOC case file) at 44.  Specifically, Plaintiff noticed that she was removed from the classroom more often than other employees, her supervisors were complaining that she was not working her assigned hours, and that she was denied breaks.  Id.  "Absent a showing of disparate treatment, the [employer's action] cannot be deemed retaliatory." Hardage, 427 F.3d at 1189 (citing Brooks v. City of San Mateo,

33

229 F.3d 917, 929 (9th Cir. 2000).  Whether or not, ultimately,
there is sufficient evidence of disparate treatment, the
allegations bolster Plaintiff's claims that retaliatory
termination took place.  The Court concludes that the relatively
close timing of the termination to the EEOC complaint, combined
with allegations of disparate treatment occurring after the EEOC
complaint, the November termination threat, and the issuance of
the October 7, 2002 PIP, are sufficient to establish causation
and a prima facie case of retaliatory termination.

b.   Defendant's Non-Discriminatory Explanation

        Plaintiff has established a prima facie case of
retaliation, so the burden shifts to Defendant to offer a non-
discriminatory explanation for its actions.  Defendant contends
that the Plaintiff's failure to complete training and poor work
attendance were the grounds for the October 7, 2002 PIP and
subsequent termination.

i.   October 7, 2002 PIP

        Prior to contacting the EEOC, Plaintiff was placed on
Performance Improvement Plans for failing to meet her training
goals on November 28, 2000, July 3, 2001, December 28, 2001, and
July 9, 2002.  Motion at 15; Motion CSF, Ex. 2 at 345-46, 348,
350.  Defendant states that in each case Plaintiff eventually
attained her required goals.  Motion at 15.  Plaintiff has not
alleged that any of these Performance Improvement Plans were

assessed for discriminatory reasons.

However, Plaintiff alleges that the October 7, 2002 PIP was assessed because she had filed an informal EEOC complaint just two weeks earlier.  The October 7, 2002 PIP does not differ from the previous Performance Improvement Plans in any way, and Defendant explains that the PIP was issued because Plaintiff was 13.5 credits short of her training requirement.  Motion CSF, Ex. 2 at 351.  Plaintiff even signed the PIP acknowledging her training deficiencies.  Id.  Due to the close timing between the complaint and the PIP, the Court concludes that the validity of Defendant's non-discriminatory explanation for issuing the PIP is a question of fact that can not be determined at the summary judgment phase.

ii.  Termination

Defendant explains Plaintiff was terminated for excessive absences from work.  The following table illustrates the number of hours Defendant allegedly assigned and those worked by Plaintiff in the ten months prior to her termination:[9]

---

[9]  Defendant adjusted its estimation of Plaintiff's hours after Plaintiff provided evidence of a greater number of hours worked.  See Defendant's Reply at 8 (citing Opposition CSF, Plaintiff Declaration ¶¶ 35-40).  The bold line in the Table indicates the approximate time period when Miyashiro became Acting Director, Plaintiff filed an informal complaint, and the parties met.

| Month | Hours Worked | Hours Assigned | Percentage |
|---|---|---|---|
| April 2002 | 15 | 76 | 20% |
| May 2002 | 4.5 | 40 | 11% |
| June 2002 | 9 | 107 | 8% |
| July 2002 | 0 | 88.5 | 0% |
| August 2002 | 9 | 68.5 | 13% |
| September 2002 | 0 | 36 | 0% |
| October 2002 | 32 | 50.5 | 63% |
| November 2002 | 21 | 67.5 | 31% |
| December 2002 | 38.2 | 47.75 | 80% |
| January 2003 | 17 | 43 | 40% |

Motion at 3, 4; Opposition to Motion CSF, Plaintiff Declaration;
Defendant's Reply at 8, 9.  Plaintiff's average monthly
attendance before the approximate time period when Miyashiro
became Acting Director, Plaintiff filed an informal complaint,
and the parties met, was about 8.7%.  After this critical time
period, Plaintiff's average monthly attendance jumped to
approximately 53.5%.

Defendant explains that Miyashiro became Acting
Director on or about October 2002 and that she should not be
bound by a previous supervisor's failure to discipline Plaintiff.
Defendant also explains that although Plaintiff's attendance
improved after the October 7, 2002 meeting, Miyashiro concluded
that this improvement was too little, too late.  Ultimately,
Defendant states that any reasonable employer would be justified

in firing an employee that appeared for work as infrequently as Plaintiff did.  However, Plaintiff alleges that Defendant's conduct contributed to her poor attendance record.  Plaintiff specifically alleges that Defendant failed to notify her of the work schedule, lied to her about the work schedule, and falsely indicated that Plaintiff "called in sick" or was AWOL. Opposition CSF ¶ 31; Opposition CSF, Elizabeth Todd Declaration ¶ 31.

Considering the close timing, Plaintiff's improvement in attendance, and allegations of inappropriate conduct, the Court concludes that the validity of the Defendant's non-discriminatory explanation for Plaintiff's termination is a question of fact that can not be determined at the summary judgment phase.

c.    <u>Pretext</u>

Defendant has offered explanations for its issuance of the October 7, 2002 PIP and for terminating Plaintiff on February 13, 2002.  The Court concludes genuine issues of material fact regarding these explanations remain.  Furthermore, the Court must deny Defendant's Motion regarding the retaliation claims if Plaintiff can produce evidence that Defendant's explanations are pretextual.

i.    <u>October 7, 2002 PIP</u>

Plaintiff alleges Miyashiro was aware of the pending

37

informal EEOC complaint and issued the October 7, 2002 PIP in retaliation just two weeks later.  The PIP may have been assessed in the course of Defendant's normal employment practices but a trier of fact must determine if Plaintiff has met her burden of showing Defendant's rationale was pretextual.

ii.  <u>Termination</u>

        Plaintiff alleges that she was not terminated because of her attendance, but rather as retaliation for filing an informal complaint with the EEOC.  Plaintiff claims that Defendant's explanation is mere pretext for a discriminatory termination.  Plaintiff bases her argument on the facts that her attendance significantly improved after the October 7, 2002 meeting and that she was never disciplined in any way for attendance problems prior to her termination.  As mentioned above, Defendant explained that Miyashiro became Acting Director on or about October 2002 and her employment decisions made from that time forward were based solely on Plaintiff's poor attendance record.

        Miyashiro claims that she discussed attendance concerns with Plaintiff at the October 7, 2002 meeting.  Defendant's Reply at 8 (<u>citing</u> Motion CSF, Ex. 1 at 217).  The attendance concerns were apparently addressed in a letter, but were not contained in the PIP issued that day.  <u>Id</u>.  In the subsequent months, Plaintiff's attendance improved dramatically and Defendant did

38

not issue Plaintiff any progressive disciplinary action Plaintiff regarding attendance.  See supra p. 36 (Table); Opposition CSF ¶ 30.

In addition, Plaintiff makes numerous allegations of retaliatory practices impacting her attendance that Defendant fails to rebut.  Plaintiff alleges that Defendant failed to notify her of the work schedule, lied to her about the work schedule, and falsely indicated that Plaintiff "called in sick" or was AWOL.  Opposition CSF ¶ 31; Opposition CSF, Elizabeth Todd Declaration ¶ 31.  These allegations further bolster Plaintiff's claim that she was terminated in retaliation for contacting the EEOC and filing an informal complaint.

For the foregoing reasons, the Court concludes that a reasonable trier of fact may find that Plaintiff has presented sufficient evidence of retaliation and Defendant's explanation for Plaintiff's termination was pretextual.  Therefore, the Court denies Defendant's Motion regarding Plaintiff's claims of retaliation.

## CONCLUSION

For the foregoing reasons, the Court: (1) DENIES Defendant's Motion for Summary Judgment; and (2) DENIES Plaintiff's request to postpone its ruling on Defendant's Motion for Summary Judgment.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, March 9, 2006.



_____
Alan C. Kay
Sr. United States District Judge

Todd v. Brownlee, Civ. No. 05-00081 ACK/KSC, ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S REQUEST TO POSTPONE THE RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT.